IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| STEVEN ANTHONY GRAHAM, #49984-004, | ) Civil Action No. 3:09-1535-RBH-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| L. FUERTES ROSARIO, HSA/MLP; | )**REPORT AND RECOMMENDATION** |
| HECTOR LOPEZ, STAFF PHYSICIAN; | ) |
| R. BLOCKER, CLINICAL DIRECTOR; AND | ) |
| J. MATTSON, MRA, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Plaintiff filed this action, pro se, on June 16, 2009.[1]  At the time of the alleged incidents, he

was an inmate at the Federal Correctional Institution in Edgefield, South Carolina ("FCI Edgefield").

He is currently an inmate at the Federal Correctional Institution in Coleman, Florida.  Plaintiff filed

an amended complaint on July 17, 2009.  He alleges that Defendants violated 42 U.S.C. §§ 1983 and

1985 and that Defendants violated his First, Eighth, and Fourteenth Amendment rights.  Defendants,

all employees of FCI Estill, are Luisa Fuertes-Rosario ("Fuertes-Rosario"), the Health Services

Administrator; Dr. Hector Lopez ("Lopez"), a Staff Physician; Dr. Rex Blocker ("Blocker"), the

Clinical Director; and June Mattson ("Mattson"), a Medical Records Technician.  See

Fuertes-Rosario Decl., Para 1; Lopez Decl., Para. 1; Blocker Decl., Para. 1; and Mattson Decl.,

Para.1.

_____

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e),
DSC.  Because these are dispositive motions, this report and recommendation is entered for review
by the court.

On January 7, 2010, Defendants filed a motion to dismiss Plaintiff's request for preliminary injunctive relief and a motion to dismiss or for summary judgment. Plaintiff, because he is proceeding pro se, was advised on January 8, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion to dismiss or for summary judgment could result in the dismissal of his complaint. After an extension of time, Plaintiff failed to respond to the Roseboro order and the undersigned, on April 23, 2010, issued an order allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action. Plaintiff filed a response on May 5, 2010.

## STANDARD OF REVIEW

Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), and a court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dept. of Soc. Servs., 901 F.2d 387 (4th Cir.1990).

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The non-moving party is entitled to have the court construe all disputed facts and all reasonable inferences drawn therefrom in the most favorable light, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v Catrett, 477 U.S. 317, 322 (1986). A party wishing to oppose summary judgment must present evidence tending to raise a material and genuine factual dispute. See Morrissey v. William Morrow & Co., 739 F.2d 962 (4th Cir. 1984), cert. denied 469 U.S. 1216 (1985); Foy v. Norfolk and W. Ry. Co., 377 F.2d 243 (4th Cir.), cert. denied, 389 U.S. 848 (1967); Bradford v. School Dist., 364 F.2d 185 (4th Cir. 1966); and Sturdivant v. Medical Eng'g Corp., 121 F.R.D. 51 (D.Md. 1988).

# FACTS

Plaintiff was transferred to FCI Edgefield on March 28, 2007. Defendants' Ex. 1[2] - Jennifer Hollett ("Hollett")[3] Decl., Para. 3. In January 2007, Plaintiff suffered a heart attack and underwent placement of a stent. See Amended Complaint at 3. Upon arrival at FCI Edgefield, Plaintiff was evaluated by medical staff and referred to the Chronic Care Clinics. He was taking Carvedilol, a beta blocker medication which was designated as non-formulary at FCI Estill. This medication was replaced by Nadolol, another beta blocker medication available on the FCI Estill formulary. Dr. Blocker explained this change to Plaintiff at his appointment on April 25, 2007. See Ex. 3 - Blocker Decl., Paras 5 and 6; Ex. 7, 4-5.

On June 26, 2007, Plaintiff complained of dizziness. Dr. Lopez conducted a neurological assessment which revealed no areas of concern. Ex. 7, 6-7. On September 24, 2007, Plaintiff complained to Dr. Lopez of pain in his feet. Some changes were made to Plaintiff's medications. Ex. 7, 9. An EKG[4] on November 26, 2007 indicated an abnormality in the anteroseptal infarct of Plaintiff's heart, as expected as the heart attack he suffered was in that area of the heart. Dr. Blocker noted that Plaintiff was in no acute distress and did not indicate any chest pain. Ex. 11, 15; see Blocker Decl., Para. 7.

---

[2]In their memorandum in support of their motion to dismiss or for summary judgment, Defendants have referred to their exhibits by letters. They, however, are labeled by number (Ex. 1, Ex. 2, etc.) and thus will be referred to as such in this report and recommendation.

[3]Hollett is a Senior Attorney for the United States Department of Justice, Federal Bureau of Prisons. Hollett Decl., Para. 1.

[4]An EKG or electrocardiogram, is:
the making of graphic records of the variations in electrical potential caused by electrical activity of the heart muscle and detected at the body surface, as a method for studying the action of the heart muscle....
Dorland's Illustrated Medical Dictionary 595 (30th ed. 2003).

Dr. Lopez examined Plaintiff on March 10, 2008. Plaintiff reported he was ok and had no complaints. Ex. 7, 13-14. Medical records reveal that on September 25, 2008, Plaintiff reported that he was ok except for a problem with his eyesight. Dr. Lopez's examination did not indicate any significant issues of concern, although some decrease in visual acuity (70/20 right eye, 40/20 left eye) and a little bit low digoxin level were noted. Dr. Lopez requested that Plaintiff's digoxin level be retested the following week and ordered an optometry consultation. Ex. 4- Lopez Decl., Para. 6; Ex. 7, 16-19. On October 7, 2008, an optometrist recommended that Plaintiff purchase glasses from the commissary. He opined that the glasses might alleviate Plaintiff's complaints of dizziness and that Plaintiff's complaints of vertigo might be related to drops in blood pressure. Ex. 11, 1-2.

On October 26, 2008, Plaintiff was examined by a Physician's Assistant ("PA") after a Correctional Officer reportedly found Plaintiff on the floor pointing to his neck. A cervical collar was applied. Plaintiff complained of numbness in his back and periodic dizziness which he claimed had been ongoing for approximately one year. He denied chest pain. A neurological assessment was reportedly normal. Ex. 7, 22-23; Ex. 8, 1-2.

On October 27, 2008, Plaintiff complained again of dizziness that had been ongoing for over a year. Examination revealed no abnormalities and a variety of lab tests were ordered. Ex. 8, 3-4.

Dr. Blocker examined Plaintiff on November 10, 2008. Plaintiff complained of dizziness over the preceding five months. Although Dr. Blocker denies that an EKG was given on that date, Plaintiff has produced a copy of a medical record (Plaintiff's Decl., Ex. E) that appears to show that an EKG was done and showed an abnormal finding similar to that found in the November 2007 EKG. Plaintiff claims he was given oxygen, but the medical records reveal that Plaintiff had an oxygen saturation level of 100% on room air. Neurological examination was within normal limits. Dr.

Blocker diagnosed Plaintiff as suffering from anxiety, provided medication to treat Plaintiff's symptoms, and ordered x-rays of Plaintiff's skull which were reportedly normal. See Blocker Decl., Para. 9; Ex. 8, 6-8; Ex. 11, 3.

On December 5, 2008, Plaintiff complained to Dr. Lopez of headaches and numbness in the back of his neck, with shortness of breath. An echocardiogram[5] and carotid doppler study were ordered because of Plaintiff's continued complaints of shortness of breath. Lopez Decl., Para. 10; Ex. 8, 10-12.

Nurse Velez examined Plaintiff for complaints of numbness in his neck and heaviness in his walking on December 27, 2008. Examination revealed no issues and Nurse Velez noted that Plaintiff was walking and speaking normally. Ex. 8, 14-15. Plaintiff did not show up for his January 13, 2009 appointment. Ex. 8, 16.

An x-ray of Plaintiff's skull in February 2009 revealed no abnormalities. Ex. 8, 18; Ex. 11, 3. An echocardiogram and carotid doppler study were performed at a local hospital on February 19, 2009. Ex. 8, 19; Ex. 11, 4-6.

Plaintiff complained of light-headedness, numbness of his head and neck, shortness of breath, and being tired all the time on March 23, 2009. Dr. Lopez's examination revealed no concerns, he continued Plaintiff's medications, and he referred Plaintiff to a cardiologist. Lopez Decl., Para.12; Ex. 9, 3-6; Ex. 11, 4-6.

---

[5]An echocardiogram is "the record produced by echocardiography." Echocardiography is: a method of graphically recording the position and motion of the heart walls or the internal structures of the heart and neighboring tissue by the echo obtained from beams of ultrasonic waves directed through the chest wall.
Dorland's at 585.

On April 9, 2009, Plaintiff complained of five weeks of left side pain. Examination revealed that Plaintiff was ambulating without problem and was not in any apparent distress. He was advised to take over-the-counter pain medication. Ex. 9, 7. On April 25, 2009, Plaintiff complained that he was too weak to walk to the dining hall for meals. An EKG was abnormal, but unchanged from the November 2007 EKG. Plaintiff was given a "lay-in" pass, directing that he not go to work or recreation until he was seen by the PA on April 27, 2009. Ex. 9, 8-9; Ex. 11, 16; see Blocker Decl., Para. 8.

On April 27, 2009, PA Glenn Link ("Link") found no evidence of any significant problem and sent Plaintiff for lab work. Ex. 9, 10-11. On June 8, 2009, PA Link again noted no physical concerns. Ex. 9, 13-14.

On June 19, 2009, Plaintiff received a cardiology consultation at a local hospital. The results of the earlier echocardiogram and EKG were noted to be unremarkable. Some medication changes were recommended to help eliminate Plaintiff's complaints of lightheadedness and fainting. Dr. Lopez modified Plaintiff's medication orders as recommended by the cardiologist. On June 23, 2009, Dr. Lopez discussed the cardiologist's recommendations with Plaintiff. Plaintiff complained of dizziness on standing and lightheadedness. Lopez Decl., Paras. 14-15; Ex. 9, 17-21; Ex. 11, 7.

On two occasions in July 2009, Plaintiff complained to PA Link of dizziness, pain in the midback, neck, and scalp. Plaintiff was provided medication to combat vertigo. Ex. 9, 22-23; Ex. 10, 1-2; Ex. 6 - Link Decl., Paras. 5-8.

On July 7, 2009, a typewritten report was received from the cardiologist that repeated some of the earlier recommendations and indicated that there were no issues of cardiac concern. The cardiologist noted that the described dizziness was not cardiac-related and suggested that a

neurological consultation might be appropriate if Plaintiff's symptoms persisted. Lopez Decl., Para. 16; Ex. 11, 10-11.

Plaintiff complained to Dr. Lopez of dizziness and periodic pressure in the front of his head on August 25, 2009. Dr. Lopez found no evidence of neurological issues. An MRI of Plaintiff's brain was ordered. Lopez Decl., Para. 16; Ex. 10, 3-6. It was conducted on September 26, 2009, and revealed no acute intercranial process and a 2-centimeter mucus retention cyst in the alveolar recess of his left maxillary sinus. Nothing was noted to be of concern. Ex. 10, 10-13; Ex. 11, 12-13. X-rays of Plaintiff's spine were taken on November 20, 2009. Ex. 11, 13.

Dr. Lopez examined Plaintiff for complaints of back and neck pain, dizziness, numbness and blurred vision on November 24, 2009. Dr. Lopez told Plaintiff that he could be seen by psychology staff for his stress or anxiety, but Plaintiff said he did not want to do so. Dr. Lopez conducted an in-depth neurological evaluation and attempted to locate the trigger for the purported dizziness, but no vertigo or nystagmus were noted on testing. See Lopez Decl., Paras. 17- 18; Ex. 10, 15-18.

On November 30, 2009, results of Plaintiff's cervical spine x-rays revealed severe degenerative disc disease in the space between Plaintiff's fifth and sixth cervical vertebrae. Lopez Decl., Para. 18; Ex. 11, 13. X-rays of Plaintiff's mid and lower back were ordered, the results of which were normal. Lopez Decl., Para. 18; Ex. 11, 14. Plaintiff left FCI Edgefield for FCI Coleman on December 9, 2009. Records from FCI Coleman on December 19, 2009, reflect that Plaintiff only complained of lower back pain and not of dizziness, chest pains, shortness of breath, numbness, double or blurred vision, or neck pain. Ex. 10, 19-23; see Lopez Decl., Para. 19.

## DISCUSSION

Plaintiff appears to have brought his claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971). In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982). Harlow, which is often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in Harlow, the Supreme Court stated that Harlow was applicable to state officials sued under 42 U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in Bivens actions and vice versa. Farmer v. Brennan, 511 U.S. 825 (1994); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Osabutey v. Welch, 857 F.2d 220, 221-223 & n. 5 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 & n. 2 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).

Plaintiff appears to allege that Defendants were deliberately indifferent to his serious medical needs, failed to respond to some of his correspondence about his medical condition, and retaliated against him for complaining about his medical care. Defendants contend that their motion to dismiss or in the alternative for summary judgment should be granted because: (1) this Court does not have subject matter jurisdiction over a Bivens action against Defendants in their official capacities; (2)

Plaintiff has not exhausted his administrative remedies;[6] (3) the pleadings fail to state a claim upon which relief can be granted under Rule 12(b)(6); (4) the pleadings do not comply with Fed. R. Civ. P. 8(a)(2); (5) the individual defendants are entitled to qualified immunity; (6) Plaintiff fails to show that they were deliberately indifferent to Plaintiff's serious medical needs; (7) negligence does not state a constitutional claim; (8) Plaintiff cannot establish a constitutional violation for any failure of Defendants to respond to his written correspondence; (9) Plaintiff fails to state a claim of retaliation; (10) Sections 1983 and 1985 do not apply in this action; and (11) the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) precludes recovery for emotional damages.

1. **Preliminary Injunctive Relief**

In his amended complaint, Plaintiff requests a preliminary injunction:

> ordering the defendants to provide urgent and immediate medical care, i.e., to see a neurologist, MRI CAT SCAN or other that are necessary to determine the cause of the symptoms which are the bases of this complaint[.]

Amended Complaint at 12. On January 7, 2010, Defendants filed a motion to dismiss Plaintiff's request for preliminary injunctive relief. Defendants contend that Plaintiff's request for relief should be denied because Plaintiff cannot show that he will likely be successful on the merits as to his claims; (2) he fails to show that he will be irreparably harmed if he is not granted preliminary relief;

---

[6]"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. <u>Porter</u>, 534 U.S. at 532. The parties dispute whether Plaintiff exhausted his administrative remedies as to all of his claims. Plaintiff claims that he grieved the majority of his issues on his Remedy ID # 519223 and has provided addenda to the grievance in which he appears to have grieved additional issues. The record in this action, however, appears to be incomplete, such that it is not possible to determined the issue of exhaustion as to all of the claims in Plaintiff's amended complaint.

(3) Plaintiff cannot show that the balance of equities tips in his favor; and (4) he fails to show that granting preliminary injunctive relief would be in the public interest. They further contend that the request for preliminary relief is moot because Plaintiff has been transferred to another Bureau of Prisons ("BOP") institution (FCI Coleman).

As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., __ U.S __, 129 S.Ct. 365, 374-376, 172 L.Ed.2d 249 (2008).

It is recommended that Defendants' motion to dismiss Plaintiff's claims for injunctive relief be granted. As Plaintiff has been transferred to FCI Coleman, his requests for preliminary injunctive relief are moot. See Ajaj v. Smith, 108 Fed. Appx. 743, 2004 WL 1663968 (4th Cir. July 22, 2004) (Where inmate seeking equitable relief from conditions at one facility was transferred from that facility to another institution, his claims were moot); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991)("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."); Magee v. Waters, 810 F.2d 451, 452 (4th Cir.1987)(prisoner's transfer moots his request for injunctive relief against conditions of confinement in facility from which he was transferred). Plaintiff also fails to show that he is entitled to relief under the factors set out in Winter. He is unlikely to be successful in the underlying dispute, as discussed below. Plaintiff also fails to show that he will suffer irreparable injury if he is not granted a preliminary injunction. Additionally, he

has not shown that the balance of equities tips in his favor or that an injunction is in the public interest.

### 2. **Official Capacity Claims**

Defendants contend that this court lacks subject matter jurisdiction to hear Plaintiff's claims against them in their official capacities. This court lacks subject matter jurisdiction as to Plaintiff's <u>Bivens</u> claims for monetary damages against Defendants in their official capacities. The United States cannot be sued without its consent, and consent is a prerequisite to a suit against the United States. <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983). The United States has not consented to suit under the <u>Bivens</u> doctrine. The bar of sovereign immunity cannot be avoided by naming officers or employees of the United States as defendants. <u>Gilbert v. Da Grossa</u>, 756 F.2d 1455, 1458 (9th Cir. 1985); <u>cf</u>. <u>Hawaii v. Gordon</u>, 373 U.S. 57, 58 (1963). Claims against Defendants in their official capacities, to the extent that Plaintiff is seeking monetary damages, are barred by the doctrine of sovereign immunity. <u>See</u> <u>Hagemeier v. Block</u>, 806 F.2d 197, 202 (8th Cir. 1986), <u>cert</u>. <u>denied</u>, 481 U.S. 1054 (1987); <u>Gilbert</u>, 756 F.2d at 1458.

### 3. **Medical Claims**

Plaintiff appears to allege that Defendants violated his constitutional claims by failing to provide him with proper medical care for his heart and other serious conditions. Defendants contend that Plaintiff fails to show that they have been deliberately indifferent to any of his serious medical needs.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id.</u>, quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The court stated:

An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.

\* \* \* \* \* \* \*

We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in

Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. As detailed above, Plaintiff has received numerous examination for his various medical conditions, including an examination from a cardiologist. He has been prescribed medications for his heart condition as well as his complaints of vertigo. Although he did not receive some of the tests as timely as he would have liked, Plaintiff received an echocardiogram and he has not shown any injury from any delay in receiving testing. Plaintiff appears to allege that Defendants violated his constitutional rights by telling him that an echocardiogram and an EKG were the same thing. Lopez and Blocker deny doing this. See Blocker Decl., Para. 10; Lopez Decl., Para. 5. Such

14

allegations, which appear to be claims of malpractice or negligence, fail to rise to the level of deliberate indifference.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

**4.      Failure to Respond to Correspondence/Processing of Complaints and Grievances**

Plaintiff alleges that Defendants failed to respond to his complaints and written correspondence. Defendants argue that Plaintiff fails to show that he has a constitutional right to have prison officials respond to his correspondence.

Allegations by Plaintiff that Defendants failed to respond to his correspondence are insufficient to hold those officials liable for constitutional violations. See Rivera v. Goord, 119 F.Supp.2d 327, 344 (S.D.N.Y.2000); Watson v. McGinnis, 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Plaintiff may be attempting to allege a claim concerning the grievance procedure. Access to administrative remedies is not itself a constitutionally protected right. See

Adams v. Rice, 40 F.3d 72 (4th Cir.1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991). Further, allegations that Defendants did not follow BOP policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).[7]

### 5. **Retaliation**

Plaintiff appears to allege that Defendants did not allow him to have necessary medical tests in retaliation for his complaining against Defendant Dr. Lopez. Defendants contend that Plaintiff's claims of retaliation fail because he has provided nothing more than bare allegations of retaliation and because he has not filed any administrative remedies alleging that he was retaliated against with respect to his earlier grievances.

Plaintiff fails to show that Defendant retaliated against him for filing grievances. He has provided nothing to support his allegations. Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d at 74. In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism

---

[7]Plaintiff may be attempting to assert claims that Lopez verbally harassed him by calling him a snitch (for filing grievances), a liar, and crazy. Lopez denies making such comments. See Lopez Decl., Paras. 13 and 17. Any such comments, while unprofessional, fail to rise to the level of a constitutional violation. See Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.1987); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983). Additionally, defamatory statements alone do not state a cognizable claim under 42 U.S.C. § 1983. Paul v. Davis, 424 U.S. 693 (1976).

because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74.

**6.    Claims under 42 U.S.C. §§ 1983 and 1985**

Defendants contend that Plaintiff cannot bring this action under § 1983 because it does not apply to federal agents.  As discussed above, claims against federal officials are not authorized by the plain language of § 1983.  Plaintiff also cannot show a violation of § 1985.  Section 1985(3)[8] provides to those injured by a conspiracy to deprive them of the equal protection of the laws a right of action against the conspirators. It reads in relevant part:

> If two or more persons in any State or Territory conspire ... for the purposes of depriving ... any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws ... the party so injured may have an action for the recovery of damages ... against one or more of the conspirators.

42 U.S.C. § 1985(3).  There is a heightened pleading standard for § 1985(3) conspiracy claims. Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995).  The elements of this claim are: (1) a conspiracy of two or more persons; (2) who were motivated by a specific class-based, invidiously discriminatory animus; (3) to deprive the plaintiff of the equal enjoyment of rights of secured by the law to all; (4) and which results in injury to the plaintiff; (5) as a consequence of an overt act committed by the defendants in connection with the conspiracy.  Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985).  In Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971), the Supreme Court

---

[8]There is no indication that Plaintiff has asserted a claim under 42 U.S.C. § 1985(1), which involves a conspiracy to prevent an officer of the United States from performing his or her duties, or 42 U.S.C. § 1985(2) which involves a conspiracy "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein..."  42 U.S.C. § 1985.

held that § 1983(5) includes conspiracies of private individuals. However, the Court limited this holding to require a plaintiff to show that an actionable private conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Byrd v. Hopson, 265 F.Supp.2d 594, 603 (W.D.N.C. 2003)(quoting Griffin v. Breckenridge ), aff'd., 2004 WL 1770261 (4th Cir. 2004),

In this case, Plaintiff has not identified any specific evidence of an agreement by Defendants to violate his civil rights. See Simmons v. Poe, 47 F.3d at 1377 (The Fourth Circuit has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts."). Plaintiffs also fail to allege or show any class-based, invidiously discriminatory animus behind Defendants' action. Thus, Plaintiff fail to establish a claim under § 1985(3).

**7.    Qualified Immunity**

Defendants contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general

> or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated his established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion to dismiss and/or for summary judgment (Doc. 18) be **granted**. It is also recommended that Defendants' motion to dismiss Plaintiff's request for preliminary injunctive relief (Doc. 19) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

June 8, 2010
Columbia, South Carolina


**The parties' attention is directed to the important information on the attached notice**.

19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).